[No. 14071.   Department One. — December 2, 1892.]

THE PEOPLE, ETC., EX REL. W. B. WILSHIRE, AP-
PELLANT, *v.* SAMUEL NEWMAN, RESPONDENT.

SAN FRANCISCO — FIRE DEPARTMENT — INVALIDITY OF "BARRY ORDI-
NANCE" — CONFLICT WITH CHARTER. — The ordinance of the city and
county of San Francisco passed March 16, 1889, popularly known as
the "Barry ordinance," assuming to establish and regulate the fire de-
partment, and to provide for the appointment of a board of fire commis-
sioners, is void, as being in conflict with the act of March 28, 1878, to
provide for reorganizing and regulating the fire department, which is
part of the charter of the city and county.

ID. — DISTINCT DEPARTMENTS OF CITY GOVERNMENT — FIRE COMMISSIONERS
INDEPENDENT OF SUPERVISORS. — The act of March 28, 1878, makes
the fire department a distinct branch of the city government, represented
by the board of fire commissioners, and the board of supervisors,
which represents another of the departments into which the government
of the city and county is distributed, has no authority to reorganize or
overthrow the board of fire commissioners.

ID. — CONSTITUTIONAL LAW — LOCAL AND POLICE REGULATIONS — EFFECT
OF CITY CHARTER. — Section 11 of article XI. of the constitution, which
delegates power to cities and counties to make and enforce local, police,
sanitary, and other regulations not in conflict with general laws, does
not confer authority upon cities to change their charters by ordinance,
or to revolutionize the city government, or abrogate a department
thereof, by any mere police regulations, but only authorizes them to make
such regulations not in conflict with general laws as are usual and neces-
sary in the government of municipalities under their respective charters.

ID. — OFFICE — ABOLITION OF PART OF APPOINTING POWER — INCUMBENTS
HOLDING OVER. — The effect of the constitution in repealing part
of the provisions of the act of March 28, 1878, declaring how and by whom

two of the fire commissioners should be appointed, did not necessarily destroy the two offices, nor effect the destruction of the board of police commissioners, nor affect the validity of the act, but the incumbents of the two offices continued to hold over after the appointing power was abolished.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*Ex-Attorney-General George A. Johnson,* and *Wilson & Wilson,* for Appellant.

*Garber, Boalt & Bishop,* for Respondent.

PATERSON, J.—This is an action in the nature of *quo warranto,* under sections 803 et seq. of the Code of Civil Procedure, to determine whether the relator or the defendant is entitled to the office of member of the board of fire commissioners of the city and county of San Francisco.

The various acts of the legislature relating to the board of fire commissioners of the city and county of San Francisco, and the effect thereof, are considered in *People* v. *Edwards,* 93 Cal. 153, and the cases therein referred to.

The relator herein relies upon an ordinance, which is fully set out in the complaint, providing for the complete reorganization of the fire department and the appointment of a board of fire commissioners. His title to the office depends upon the validity of that ordinance.

On the 16th of March, 1889, the ordinance in question, popularly known as the "Barry ordinance," was passed by the board of supervisors of the city and county of San Francisco, establishing and regulating the fire department, and providing for a commission, consisting of five members, to be appointed by the board of supervisors. On April 8, 1889, the board appointed the relator and Charles H. Haswell, H. R. Mann, P. F. Dunne, and Maurice Schmitt, members of the board, to have the

control and management of the fire department. The court below held, and properly we think, that the board of supervisors had no authority to pass said ordinance.

Section 11 of article XI. of the constitution provides that " any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws "; but this delegation of power to make police regulations is authority to make only such regulations as are usual and necessary in the government of municipalities under their respective charters. The act of March 28, 1878, providing as it does for the organization and administration of one of the departments of the municipal government, is a part of the charter of the city and county of San Francisco, and cannot be abrogated by any mere police regulation. Under it the fire department is a branch of the municipal government. (*Whitney* v. *Board of Delegates*, 14 Cal. 497.) In *People* v. *Hammond*, 66 Cal. 654, it was held that the act of April 1, 1878, relating to the police department, being a part of the charter, was continued in force by the constitution. The act under consideration there holds the same relation to the Consolidation Act as the statute we are now considering. The provision of the constitution referred to was not intended to clothe the board of supervisors with the power to annul a constituent part of the charter itself, or to overthrow one of the municipal departments. The power conferred by it is not vested in any particular branch of the municipal government, but in the whole municipality. The government of the city and county of San Francisco is distributed into different departments. The board of supervisors represents one of these departments. The board of fire commissioners represents another department. The board of supervisors has no more authority to reorganize the board of fire commissioners than the latter has to reorganize the board of supervisors. The same power that established one board established the other, and one is just as essential and important a part of the municipal govern-

ment as the other. The regulations provided for by section 11 of article XI. are such as are in accordance with the fundamental or organic law. This must be so; otherwise the board of supervisors could completely revolutionize the entire city government under a grant of power to make " such local, police, sanitary, and other regulations as are not in conflict with general laws,"— in effect, make a new charter by ordinance, and change the same as often as it desired.

The strongest argument against the validity of the act is, that in repealing the provision declaring how and by whom two of the officers should be appointed, the constitution necessarily destroyed these two offices, and inasmuch as the two were parts of an integral whole, and the provisions relating thereto being dependent and inseparable, the destruction of the two effected the destruction of all. This contention was fully presented by eminent counsel in *People* v. *Hammond,* 66 Cal. 654, and a petition for rehearing was filed and denied. After such consideration and determination by the court, we think the point should be treated as finally settled.

There is nothing in *People* v. *Perry,* 79 Cal. 115, inconsistent with what has been said above. In that case, we held, simply, that as the legislature *had failed to fix the term of office of the members of the board of health, they held at the pleasure of the governor.* In *State* v. *Brewster,* 44 Ohio St. 592, cited by appellant, it was admitted by all parties that upon the expiration of Brewster's term there was a *vacancy* in the office.

Judgment affirmed.

GAROUTTE, J., and HARRISON, J., concurred.